**Henrietta VALENZUELA, Petitioner,**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**No. 94SC74.**

Supreme Court of Colorado, En Banc.

April 3, 1995.

---

David F. Vela, State Public Defender, Beth L. Krulewitch, Deputy State Public Defender, Denver, for petitioner.

Gale Norton, Atty. Gen. Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Deborah Isenberg Pratt, Asst. Atty. Gen., Crim. Enforcement Section, Denver, for respondent.

Justice MULLARKEY delivered the Opinion of the Court.

Henrietta Valenzuela, the defendant, appeals a holding by the court of appeals, *People v. Valenzuela*, 874 P.2d 420 (Colo.App. 1993), requiring her to pay interest on Aid to Families with Dependent Children (AFDC) and food stamp benefits she fraudulently obtained.[1]

Valenzuela applied for AFDC and food stamp benefits from the Jefferson County Department of Social Services (Department). On her application, Valenzuela claimed that the only household income was AFDC benefits which she received from the Department. From December of 1989 through June of 1990, Valenzuela received AFDC and food stamp benefits in an amount based on the income she claimed in the application. In May 1990, the Department discovered that Valenzuela was gainfully employed during the time she received $5,779 in benefits, in-

---

**1.** We granted certiorari on the following issue: Whether the sentencing court abused its discretion by ordering that defendant Valenzuela must pay $1,006.74 in interest to Jefferson County as part of her restitution obligation.

cluding $3,492 in AFDC funds and $2,287 in food stamp funds.

On January 21, 1992, Valenzuela pled guilty to one count of attempted theft of the funds, in violation of sections 18–2–101[2] and 18–4–401,[3] 8B C.R.S. (1986). After considering the facts of the case, the sentencing court ordered Valenzuela to serve a four year probationary sentence. As a condition of probation, she was required to pay restitution to the Department in the amount of $6,785.74, pursuant to section 16–11–204.5, 8A C.R.S. (1986), the criminal restitution statute.[4] Of the total, $1006.74 was interest on the amount actually taken.

Valenzuela appealed, arguing that she was not required to pay interest.[5] The court of appeals found that interest may be assessed in a welfare fraud case so long as the Department actually suffered a loss. However, the court of appeals remanded the case because the sentencing court failed to consider Valenzuela's ability to pay, as required by section 16–11–204.5.[6] Valenzuela petitioned this court to review the award of interest, and we granted certiorari. We hold that interest may be charged as part of restitution with respect to both the AFDC and food stamp benefits, but that the trial court must reassess the amount of interest charged on the food stamp benefits. We therefore affirm in part and reverse in part the judgment of the court of appeals and return the case with directions to remand to the trial court for reconsideration of the proper amount of interest on the fraudulently obtained food stamps.

## I.

■ Valenzuela contends that the court-ordered restitution could not require her to pay interest on the amount she fraudulently obtained from the government. She argues that the prosecution did not meet its burden of establishing actual injury with respect to the interest because the evidence did not establish whether the money would have remained in a general interest bearing account if the money had not been stolen. Under her view, the Department suffered no injury requiring payment of interest because the Department would have paid the benefits to a qualified applicant. We disagree.

■ The restitution statute requires that the defendant make restitution to the victim of her conduct and that such restitution shall be ordered by the court as a condition of probation. § 16–11–204.5. Awarding interest is compensation for actual, pecuniary damage suffered by the victim incidental to the defendant's crime of fraudulently obtaining funds because the victim loses the use of

2. Section 18–2–101 states, in relevant part:

Criminal attempt. (1) A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense. Factual or legal impossibility of committing the offense is not a defense if the offense could have been committed had the attendant circumstances been as the actor believed them to be, nor is it a defense that the crime attempted was actually perpetrated by the accused.

3. Section 18–4–401 states, in relevant part:

A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:
(a) Intends to deprive the other person permanently of the use or benefit of the thing of value; or
(b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use and bene-

fit; or
(c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use and benefit. . . .

4. Section 16–11–204.5 requires that:

As a condition of every sentence to probation, the court shall provide that the defendant make restitution to the victim of his conduct . . . for the actual damages which were sustained. Such restitution shall be ordered by the court as a condition of probation. The amount of such restitution shall be based on the actual pecuniary damages sustained by the victim, the ability of the defendant to pay, and the defendant's obligations to support his dependents and to meet other family obligations.

5. Valenzuela's duty to pay the $5,779.00 in fraudulently obtained benefits is not at issue in this case.

6. This issue is not before this court, and we do not address it.

the money involved. *People v. Acosta,* 860 P.2d 1376, 1383 (Colo.App.1993). Interest is awarded as restitution to compensate the victim for such a loss of use; it is not intended to reimburse the victim for interest that otherwise would have been earned on the funds. *Id.; Voight v. Colorado Mountain Club,* 819 P.2d 1088, 1092 (Colo.App.1991).

Under our analysis, the prosecution is not required to show that the Department actually lost interest or was forced to pay interest because of Valenzuela's conduct. Rather, because Valenzuela wrongfully deprived the Department of the funds, the statutory law requires that she repay the amount, including interest, to compensate the Department for the loss of the use of the funds.

Similarly, the public assistance statute requires payment of interest as restitution in a civil action. Section 26–2–128(1), 11B C.R.S. (1989), requires:

> [A]ny fraudulently obtained public assistance or fraudulently obtained overpayments shall be recoverable and payable in proportionate shares as provided in section 26–1–112(2)(b), and *interest shall be charged and paid to the county department on any sum fraudulently obtained calculated at the legal rate and calculated from the date the recipient obtained such sum to the date such sum is recovered.*

(Emphasis added.)

The legal rate of interest is defined in section 5–12–102(1)(b), 2 C.R.S. (1992), and requires that:

> [i]nterest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

While the Department chose not to pursue a civil action under this statute, the statute is instructive for purposes of determining restitutionary damages. To the extent that restitution is required, the statute establishes that the proper measure of restitution is the amount fraudulently obtained in addition to interest. ·

Thus, applying the legal rate of interest to any fraudulently obtained public assistance requires that eight percent per annum interest be applied from the date when the amount is fraudulently obtained to the date when the amount is recovered. The statute does not require, however, the prosecution to prove that the money would not have been given to another person. Rather, the statute specifically allows the Department to recover the amount fraudulently obtained plus the legal rate of interest.

Therefore, an award of interest in addition to the amount of stolen AFDC funds was appropriate.

II.

■ Valenzuela also argues that the calculation of interest for the food stamps was inappropriate. She argues that the prosecution did not prove that the Department lost interest as a result of her fraud. In response, the prosecution asserts that interest should be awarded on the food stamp theft but concedes that the wrong date was used to calculate the interest. Under the Department's view, as expressed by the prosecution, the injury occurred when the Department was required to reimburse the federal government for the fraudulently obtained food stamps. The injury did not occur when the food stamps were disbursed to Valenzuela, but occurred at a later point in time. We accept the concession.

As discussed above, the restitution statute requires a showing of actual injury. Interest may be charged subsequent to that loss for the loss of use of the funds.

The calculation of interest for the theft of food stamps is different from AFDC benefits because the Department's actual loss occurred at a different time. Food stamps, unlike AFDC benefits, are fully funded by the federal government. According to testimony at the sentencing hearing, after the federal government provides the Department with food stamp funds, the Department places these funds in a county general fund for disbursement to recipients. The Department must reimburse the federal govern-

ment, however, for any food stamp funds which were obtained fraudulently.

The Department, then, suffers no injury to its own pecuniary interest until it reimburses the federal government. Once the federal government is reimbursed, the Department has suffered an actual loss for which a fraudulent claimant is responsible. Because the time of this reimbursement is the point at which the Department suffers actual loss, interest from that time may be added to any damage award as part of the required restitution.

### III.

We affirm the holding of the court of appeals requiring payment of interest on the fraudulently obtained AFDC funds. We reverse its holding requiring payment of interest on the fraudulently obtained food stamps from the time of the theft. Although we hold that the Department is entitled to interest on the fraudulently obtained food stamps, the interest should accrue only from the time of actual injury. In this case, the Department suffers actual loss only when it reimburses the federal government for the fraudulently obtained food stamps. The trial court is instructed to determine when the reimbursement to the federal government occurred and to determine applicable interest from that time.