Carolyn Ersila **ROBERTS**, a/k/a
Carolyn Wilson, Petitioner,

v.

The **PEOPLE** of the State of
Colorado, Respondent.

No. 05SC140.

Supreme Court of Colorado,
En Banc.

Feb. 13, 2006.

Rehearing Denied April 3, 2006.*

David S. Kaplan, Colorado State Public
Defender, Andrew C. Heher, Deputy State
Public Defender, Denver, for Petitioner.

John W. Suthers, Attorney General, Elizabeth Rohrbough, Assistant Attorney General,
Appellate Division, Criminal Justice Section,
Denver, for Respondent.

BENDER, Justice.

## INTRODUCTION

We review the court of appeals' decision in
*People v. Roberts*, 114 P.3d 75 (Colo.App.
2005), which affirmed an award of restitution
imposed on Carolyn Ersila Roberts after she
pled guilty to theft from an at-risk adult.
The court of appeals held that the trial court
did not abuse its discretion or exceed its
statutory authority when it included both
pre-judgment interest of eight percent and
post-judgment interest of twelve percent in
Roberts's restitution order.

We affirm the judgment of the court of
appeals and hold that Colorado's sentencing

*Justice HOBBS and Justice EID do not partici-    pate.

and criminal restitution statutes require trial courts to include pre-judgment interest in orders of restitution as a condition of probation to compensate fully victims for loss of use of money from the time the money is stolen to the time a restitution award is entered. Because post-judgment interest on the restitution amount awarded has the statutory purpose to encourage speedy payment of the restitution order, which is different from the purpose of pre-judgment interest, a trial court must impose both pre-judgment interest and post-judgment interest in probationary restitution orders.

## FACTS AND PROCEEDINGS BELOW

While working as a caregiver to an elderly client, Roberts received eleven personal checks from that client totaling over six thousand dollars. Although Roberts claimed that these checks were to reimburse her for money she spent purchasing medications and supplies for her client, she could not produce receipts for these purchases. Roberts was charged with theft from an at-risk adult. After she pled guilty, the court sentenced her to five years of probation and ordered her to pay restitution.

The court calculated the amount of restitution by totaling the amount of money Roberts stole from her client plus interest of eight percent compounded annually from the date of the thefts to the date of the restitution order. Thus, the court ordered Roberts to pay $6645.86 in stolen money plus pre-judgment interest of $2139.31, for a "grand total" of $8785.17. As required by Colorado's restitution statute, the court also imposed an annual post-judgment interest rate of twelve percent on the judgment until Roberts paid the judgment amount in full.

Roberts appealed the restitution order to the court of appeals, arguing that the trial court erred when it ordered her to pay pre-judgment interest of eight percent. Specifically, Roberts argued that the portion of the trial court's restitution order that included the eight percent pre-judgment interest exceeded that court's sentencing authority be-

cause the criminal restitution statute provides only for post-judgment interest. The court of appeals affirmed the trial court's restitution order, reasoning that a trial court has broad discretion in setting the amount of restitution, that one purpose of restitution is to compensate the victim for loss of use of money, and that the restitution statute must be read liberally to make the victim whole. *Roberts*, 114 P.3d 75. That court held that the trial court did not abuse its discretion or exceed its statutory sentencing authority when it imposed pre-judgment interest of eight percent compounded annually in the restitution award. *Id.*

Roberts sought certiorari review, arguing that the trial court exceeded its statutory authority by ordering her to pay pre-judgment interest—that is, interest on the amount she stole from the date of the offense to the date of the restitution order—at the rate of eight percent compounded annually.[1]

Roberts argues first that Colorado's restitution statute does not explicitly permit pre-judgment interest and second that the provision of the restitution statute requiring post-judgment interest precludes pre-judgment interest.

## ANALYSIS

### A. Colorado's Restitution Statute Requires Trial Courts to Impose Pre-Judgment Interest in a Restitution Order to Compensate the Victim for Loss of Use of Money.

We first address Roberts's argument that including pre-judgment interest in a restitution order is prohibited because Colorado's restitution statute does not explicitly permit pre-judgment interest. Roberts argues that had the General Assembly intended to permit pre-judgment interest, it would have explicitly provided for it in the statute.

Restitution in criminal cases is part of a trial court's sentencing function. *See* §§ 18–1.3–603, C.R.S. (2005). A sentence which is beyond the statutory authority of

1. The question upon which we granted certiorari is:

Whether the court erred in including an award of prejudgment interest as well as an award of post-interest in its restitution order.

the court is illegal. *People v. District Court*, 673 P.2d 991, 995 (Colo.1983).[2] To address Roberts's argument that the trial court exceeded its statutory authority, we must determine the intent of the General Assembly beginning with the plain language of Colorado's restitution statute. *Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo.2005); *see also* § 2–4–101, C.R.S. (2005).

Colorado's sentencing statute requires "[a]s a condition of every sentence to probation, [trial courts] *shall order* that the defendant make *full restitution* pursuant to" Colorado's restitution statute. § 18–1.3–205, C.R.S. (2005)(emphasis added). Colorado's restitution statute emphasizes restitution as a crucial element of sentencing. *See* §§ 18–1.3–601 to 603 C.R.S. (2005).[3] The General Assembly recognized the value of restitution as a "deterrent to future criminality," as a "mechanism for the rehabilitation of offenders," and as compensation for the "suffering and hardship" of victims and their families. § 18–1.3–601, C.R.S. (2005). As a condition of probation, trial courts must order restitution to compensate victims for "any pecuniary loss suffered by a victim," including the "loss of use of money," and *"other losses or injuries proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money"*:

> "Restitution" means *any pecuniary loss suffered by a victim,* and includes but is not limited to all out-of-pocket expenses, interest, *loss of use of money,* anticipated future expenses, rewards paid by victims, money advanced by law enforcement agencies, money advanced by a governmental agency for a service animal, adjustment expenses, *and other losses or injuries proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money.* "Restitution" does not include damages for physical or mental pain and suffering, loss of consor-

tium, loss of enjoyment of life, loss of future earnings, or punitive damages.

§ 18–1.3–602(3)(a), C.R.S. (2005) (emphasis added); *see* § 18–1.3–205, C.R.S. (2005).

■ The plain language of this statute, when read with Colorado's sentencing statute's requirement that trial courts include "full restitution" as a condition of probation, requires trial courts to include pre-judgment interest in probationary restitution orders because it includes in the definition of restitution "any pecuniary loss suffered by a victim," including "loss of use of money." § 18–1.3–602(3)(a), C.R.S. (2005). The term "loss of use of money" means not only the amount of money stolen, but also the value of the *use* of the money stolen from the victim from the date the money was stolen to the date of the restitution award. Interest is defined as "[t]he percentage that a borrower of money must pay to the lender in return for *the use of the money." Black's Law Dictionary,* Seventh Ed., 818 (1999) (emphasis added). Hence, interest represents the proper measure of the value of the use of the money the victim lost because the defendant deprived the victim of the use of her money. In addition to compensating victims for the amount of money stolen, trial courts must therefore include interest in a probationary restitution order to compensate the victim for the "loss of use" of stolen money from the date of the thefts to the date of the judgment because this represents the period of time during which the victim lacked the use of her stolen money.

In addition, a review of the history of the sentencing and restitution statutes supports our interpretation of the term "loss of use of money." An earlier version of the sentencing statute required restitution as compensation only for "actual pecuniary damages" and did not include the term "loss of use of money":

> As a condition of every sentence to probation, the court shall provide that the defen-

---

**2.** Generally, the amount of a restitution award is a matter for the trial court to determine factually. But whether the trial court may award pre-judgment interest on the amount of restitution determined by that court is an issue of whether the pre-judgment interest is authorized by statute.

**3.** At the time of the restitution order, July 2002, the restitution statute was located at section 16–18.5–101, *et seq. See* note 5, *infra.*

dant make restitution to the victim of his conduct ... for the actual damages which were sustained.... The amount of restitution shall be equal to the *actual pecuniary damages* sustained by the victim.

§ 16–11–204.5, 8(A) C.R.S. (1986) (emphasis added).

In *Valenzuela v. People,* we interpreted this former statute in a case involving fraudulently obtained food stamps to hold that the trial court properly included interest of eight percent in the restitution order from the date the funds were fraudulently obtained to the date of repayment. 893 P.2d 97 (Colo.1995). We reasoned that "[a]warding interest is compensation for actual, pecuniary damage suffered by the victim incidental to the defendant's crime of fraudulently obtaining funds because the victim *loses the use of the money involved,*" and that "[i]nterest is awarded as restitution to compensate the victim for such a *loss of use.*" *Id.* at 99–100 (emphasis added). We concluded that "because [the defendant] wrongfully deprived the [victim] of the funds, the statutory law [the restitution section of the former sentencing statute] *requires* that she repay the amount, *including interest,* to compensate the [victim] for the *loss of the use* of the funds." *Id.* (emphasis added). Therefore, *Valenzuela* held that when a trial court imposes restitution as a condition of probation, the former statute required trial courts to include pre-judgment interest as part of the restitution amount to compensate the victim for loss of use of money.

In 2000, the General Assembly relocated and amended the criminal restitution requirements and added, among other terms, "loss of use of money" to the definition of restitution. § 16–18.5–102(3)(a), C.R.S. (2000).[4] This amendment to the statute re-

flects our holding in *Valenzuela* that interest must be charged from the date of the theft. Thus, when the General Assembly added "loss of use of money" to the restitution statute, it codified our holding in *Valenzuela* that when a trial court imposes restitution as a condition of probation, pre-judgment interest must be included as part of the restitution award to compensate victims for loss of use of money.[5]

Despite the General Assembly's addition of "loss of use of money" to the definition of restitution, Roberts argues that *Valenzuela* differs from the present case. She argues that that case involved fraud in obtaining public assistance funds and that we based our holding on the public assistance statute which requires eight percent pre-judgment interest, rather than on the criminal restitution statute.

Although Roberts correctly notes *Valenzuela*'s reference to the public assistance and civil restitution statutes, we disagree with her argument. *Valenzuela* held, independent of the public assistance statute and the civil restitution statute, that the restitution requirement in the former version of the sentencing statute required trial courts to include pre-judgment interest in restitution awards to compensate victims for loss of use of money:

> [B]ecause [the defendant] wrongfully deprived the [victim] of the funds, the statutory law requires that she repay the amount, including interest, to compensate the [victim] for the loss of the use of the funds.

*Valenzuela,* 893 P.2d at 100. Because that case involved fraud in public assistance funds, we noted that the public assistance statute supported our holding. *Id.* (citing § 26–2–128(1), 11B C.R.S. (1989) (requiring

---

4. This statute, relocated again in 2002, amended again in 2003 and again in 2004, remained substantially the same on the date of Roberts's restitution order and remains substantially the same today. *See* 18–1.3–602(3)(a), C.R.S. (2005).

We note that although the General Assembly also added the term "interest" to the restitution statute, we do not address the meaning or legislative purpose of this term.

5. We note that *Valenzuela* did not distinguish between pre- and post-judgment interest. Rath-

er, *Valenzuela* held that interest was required from the date of the theft to the date of repayment. When the General Assembly added both "loss of use of money" and a specific rate of post-judgment interest to the restitution statute, this divided restitutionary interest into pre- and post-judgment interest. Post-judgment interest must be assessed at a rate of twelve percent, and trial courts have discretion to determine what rate of pre-judgment interest to impose. See sections B and C, infra.

"interest shall be charged ... at the legal rate ... from the date the [defendant] obtained such sum to the date such sum is recovered")). Thus, we held that although the victim pursued criminal restitution rather than civil restitution, the civil restitution statute was "instructive for purposes of determining restitutionary damages." *Valenzuela,* 893 P.2d at 100.

Based upon the plain language of Colorado's sentencing and restitution statutes, the requirement that we construe the restitution statute liberally to make the victim whole, and on our holding in *Valenzuela,* later codified by the General Assembly, that actual pecuniary damages include loss of use of money, we hold that the trial court properly included pre-judgment interest in Roberts's restitution order.

**B. The Statutory Requirement of Twelve Percent Post–Judgment Interest Does not Preclude Imposition of Pre–Judgment Interest**

We turn next to Roberts's argument that the trial court imposed restitution beyond its sentencing authority because imposing pre-judgment interest violates the section of the restitution statute that requires post-judgment interest. *See Holliday v. Bestop, Inc.,* 23 P.3d 700, 706 n. 5 (Colo.2001) (recognizing the rule of statutory construction *"expressio unius est exclusio alterius,"* the expression of one thing implies the exclusion of the other). Roberts argues that because the restitution statute explicitly requires post-judgment interest but does not mention pre-judgment interest, the post-judgment interest language precludes imposition of pre-judgment interest and that twelve percent post-judgment interest represents the legal limit on the interest a court may impose.

As discussed earlier, Colorado's restitution statute requires trial courts to impose pre-judgment interest when it imposes restitution as a condition of probation to compensate the victim for loss of use of money. In contrast, the statute differentiates post-judgment interest from pre-judgment interest by requiring in a separate section the trial court to impose post-judgment interest *in addition* to the restitution amount. *See* § 18–1.3–

603(4), C.R.S. (2005). The statute states that "[a]ny order for restitution ... *shall also be deemed to order that* ... the defendant owes interest from the date of the entry of the order at the rate of twelve percent per annum." § 18–1.3–603(4)(b)(I), C.R.S. (2005) (emphasis added). The word "also" implies that *in addition* to the restitution amount, the defendant *also* must pay post-judgment interest until she pays the order in full. Thus, pre- and post-judgment interest are required by distinct subsections of the statute. The statute, when viewed in its entirety, requires pre-judgment interest as part of the restitution amount to compensate fully the victim, and it also requires post-judgment interest for as long as the victim has not been paid in full. Nothing in the post-judgment interest provision precludes imposing pre-judgment interest or contradicts our holding that a trial court must impose pre-judgment interest to compensate a victim for loss of use of money.

■ We note that post-judgment interest addresses different policy goals than pre-judgment interest. The statute "ensure[s] full restitution for victims of crime in the most expeditious manner." § 18–1.3–601(1)(g)(I), C.R.S. (2005). While trial courts must impose pre-judgment interest as part of the probationary restitution amount to ensure full restitution for victims, they must add post-judgment interest to all restitution orders, not to compensate for actual pecuniary losses as a component of the restitution amount, but to encourage expeditious payment of the restitution order. The amount of post-judgment interest owed will depend on how quickly the defendant pays the restitution order. Defendants can avoid post-judgment interest altogether by immediately paying the restitution amount.

The legislative history of the restitution statute supports our conclusion that the purpose of post-judgment interest is to encourage speedy repayment. In 1999, the General Assembly appointed a commission to review Colorado's criminal restitution requirements. *Study of Criminal Restitution in Colorado, Report to the Colorado General Assembly,* Colorado Legislative Council Research Publication No. 467, November 1999, page 1. This

commission recognized that under the previous restitution regime, victims had difficulty knowing how to collect their restitution, often had to face their offender again in civil court, and often incurred additional costs during the collection process. *Id.* at 55. In response to the commission's findings, the General Assembly amended the restitution statute to better provide for efficient payment of restitution orders.

The post-judgment interest subsection appears to have been added as part of the General Assembly's response to the 1999 commission report to encourage efficient payment of restitution awards. The other requirements of this subsection share this goal. This subsection states that an order for restitution constitutes "a final civil judgment" that "remain[s] in force until the restitution is paid in full." § 18–1.3–603(4)(a), C.R.S. (2005). This allows a victim to collect her restitution award without the time and expense necessary to file an additional civil action. In addition to the amount of the award, a defendant is *also* liable for fees incurred in collecting the award and this section imposes a lien on a defendant's personal property to assist the victim in collecting the award.[6] § 18–1.3–603(4)(c), C.R.S. (2005). Accordingly, we conclude that the General Assembly added the twelve percent post-judgment interest provision to advance the statutory purpose of "full restitution for victims of crime *in the most expeditious manner.*" § 18–1.3–601(1)(g)(I), C.R.S. (2005) (emphasis added).

Because the restitution statute provides for post-judgment interest in a section with a different purpose (speedy repayment of restitution) than the sections concerning pre-judgment interest (full compensation for the loss of money and its use), articulation of post-judgment interest in the statute in no way excludes the mandate of the sentencing statute, the restitution statute, and *Valenzue-*

la, that trial courts must include pre-judgment interest as part of a probationary restitution order to compensate fully victims for loss of use of money.

## C. The Trial Court has the Discretion to Set the Rate of Pre-judgment Interest

▉ Having determined that the trial court properly included pre-judgment interest as part of Roberts's restitution order, we address the trial court's decision to set the rate at eight percent.

The restitution statute does not require any specific pre-judgment interest rate as it does for post-judgment interest (twelve percent), pursuant to section 18–1.3–603(4)(b)(I), C.R.S. (2005). Restitution in a criminal case is part of the sentencing process. *See* § 18–1.3–603, C.R.S. (2005). Trial courts must determine facts necessary to determine the amount stolen from the victim as well as the appropriate pre-judgment interest rate to make the victim whole. Absent a clearly erroneous finding of fact, we will not interfere with a trial court's decision on these issues.

Here, we note that the civil interest rate of eight percent, while not controlling, appears reasonable and appropriate under the circumstances. Hence, we find no error.

## D. Roberts's Miscellaneous Arguments

Finally, we do not address the issue argued by both parties of whether the victim is a judgment creditor pursuant to Colorado's codification of the Uniform Consumer Credit Code because we hold that the sentencing and restitution statutes require awards of probationary restitution to include pre-judgment interest to compensate victims for loss of use of money. *See* §§ 5–1–101 to 5–13–105, C.R.S. (2005).[7]

---

6. This section also attempts to establish restitution as an exception to federal bankruptcy law. § 18–1.3–603(4)(d), C.R.S. (2005). Although this provision has been preempted by a federal bankruptcy court decision, this attempt further demonstrates the extent to which the General Assembly went in paragraph (4) to ensure full repayment of restitution awards. *In re McNabb,* 287 B.R. 820 (Bankr.D.Colo.2003).

7. Roberts cites two additional cases to support her argument that the trial court abused its discretion by including pre-judgment interest in her restitution order, *People v. Acosta* and *People v. Garcia.* 860 P.2d 1376 (Colo.App.1993) *cert. denied* Oct. 25, 1993; 55 P.3d 243 (Colo.App.2002). We overrule *Acosta* because it was decided before the General Assembly amended the restitution statute to require both pre-judgment interest

## CONCLUSION

For the reasons stated above, we affirm the judgment of the court of appeals.

and post-judgment interest in probationary restitution awards. *Garcia* does not address the propriety of pre-judgment interest and does not conflict with our holding in the present case.